**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DUANE ZIEMBA                           :         CIVIL NO. 3:00CV391 (HBF)

     V.                                   :

FREDERICK THOMAS, ET AL.               :         MARCH 21, 2005

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I.     FACTS AND PROCEDURAL BACKGROUND

Plaintiff, an inmate committed to the custody of the Department of Correction for the State of Connecticut ("DOC"), brings this action pursuant to 42 U.S.C. §1983 against ten (10) DOC officials concerning an incident, or a series of incidents, that occurred at various correctional facilities in 1998-99.  By Amended Complaint dated October 11, 2002, the plaintiff alleges that defendants Thomas, Fretard, Willard, Schefer, Fulcher and Forrestal utilized excessive force during an incident at Corrigan Correctional Institution on March 9, 1998.  Specifically, he alleges that the first five listed defendants "assaulted him" in a sallyport, while defendant Forrestal failed to intervene.  The plaintiff also makes a number of allegations concerning his treatment by DOC officials prior to, and subsequent to, the alleged "assault" on March 9, 1998.  Prior to the incident, plaintiff alleges that he was forced to court with no shoes and had a newspaper article and various other property items taken from him.  Subsequent to the March 9 incident, plaintiff alleges that he was subjected to a "surprise" disciplinary hearing on charges relating to the March 9 incident, that the investigation of the March 9, 1998 incident was a "cover-up", and that he was subsequently transferred to another correctional facility in "retaliation."

On January 21, 2003, the defendants filed a Motion to Dismiss a number of the plaintiff's claims against several of the defendants. By Ruling dated May 21, 2003, this motion was granted in part and denied in part. The four undersigned defendants: former Commissioner Armstrong, Warden David Strange, Warden Mark Strange, and former Investigator Raymond Elterich now move for summary judgment on all of the plaintiff's claims.

## II.     STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment "…if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In further comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.

Celotex, Corp. v. Catrett, 477, U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," Capital Imaging Assocs. v. Mohawk Valley Medical Assoc., 996 F.2d 537, 541 (2d Cir.), cert. denied, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." Celotex Corp., at 323-324. "Summary Judgment serves as the ultimate screen to weed out truly

unsubstantiated lawsuits prior to trial." Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L.Ed.2d 759 (1998).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Those facts that are material fact will be identified by the substantive law governing the case. Anderson, 477 U.S. at 248. Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. Knight v. Fire Insurance Company, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment. Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999). Additionally, the evidence presented in opposition to summary judgment must be presented in a manner consistent with its admissibility at trial. See First National Bank Co. of Clinton, Ill. V. Insurance Co. of North America, 606 F.2d 760 (7th Cir. (1979) (in ruling on summary judgment motion, the Court properly relied upon documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to the litigants from third person, and hearsay which does not fall under one or more exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not be properly considered. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct 1598 2 L.Ed.2d 142 (1970); Benyene v. Coleman Security Service, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stansy Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

Moreover, plaintiff must point to "specific facts showing that there is a genuine issue for trial." Rule 56(e); <u>Anderson</u>, 477 U.S. at 248; see also <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (Party may not rely on conclusory statements or an argument that the affidavits in support of the motion are not credible).  Plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial.  <u>Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.</u>, 812 F.2d 141, 144 (3d Cir. 1987).

## III.    <u>SUPERVISORY LIABILITY</u>

At the time of the incidents set forth in the plaintiff's Complaint, the two undersigned defendants:  Commissioner Armstrong and Warden David Strange, were administrators and supervisors within the DOC.[1]  The plaintiff does not allege that these defendants directly participated in the incidents set forth in the plaintiff's Complaint.  Indeed, it is evident from the plaintiff's Complaint that he names these two as defendants solely on the basis of their supervisory position(s) within the DOC.  However, it is well established that a supervisor may not be held liable under Section 1983 merely because [they were] in a high position of authority in the prison system.  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994).  Moreover, even if his subordinate allegedly committed a constitutional tort, a supervisor cannot be held liable under Section 1983.  <u>Leonard v. Poe</u>, 282 F.3d 123, 140 (2d Cir. 2002).  The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.  <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989) quoting <u>Johnson v. Glick</u>, 481 F.2d 1023, 1034 (2d Cir. 1983):

> A supervisory official may be personally involved in a section 1983 violation in several ways:  (1) the official may have directly participated in the violation; (2) the official, after learning of the violation, may have failed to remedy the

---

[1] Commissioner Armstrong has since retired from the DOC.

wrong; (3) the official may have created a policy or custom under which unconstitutional practices occurred; (4) the official may have been grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official may have exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. See *Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir 1995)*; see also *Williams v. Smith, 781 F.2d 319, 323-34 (2d Cir. 1986)*.

In this case, there are no facts supporting the imposition of supervisory liability against defendants Armstrong and David Strange on any of the above theories. Accordingly, these defendants are entitled to summary judgment.

### A.    Commissioner Armstrong

The plaintiff does not allege that Commissioner Armstrong personally participated in the pertinent incident(s), or that he has liability based on his status as a DOC policymaker, or that he has liability based on his supervision of DOC subordinates. Indeed, the sole theory of supervisory liability asserted by the plaintiff is that Commissioner Armstrong was deliberately indifferent to the rights of others by failing to act on information that unconstitutional acts were occurring.[2] (See Complaint, paras. 26, 50). In order to establish the personal involvement of a supervisor based upon deliberate indifference, plaintiff must allege: (1) "that federal or state law imposed a duty upon the supervisor to intervene in some way; (2) that the supervisor has actual or constructive notice of unconstitutional practices carried out by his supervisees -- which notice triggered his duty to intervene -- yet deliberately failed to take such action …; (3) that [this failure to act] was the proximate cause of the [plaintiff's] injury." Murphy v. New York Racing Ass'n, Inc., 76 F. Supp. 2d 489, 500 (S.D.N.Y. 1999) (internal citations and quotations omitted); see also Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). A review of the evidence

---

[2] This theory is virtually indistinguishable from the "failure to remedy the wrong" theory set forth in Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

demonstrates that the plaintiff cannot satisfy this test. While it is certainly conceded that federal and state law would impose a duty upon Commissioner Armstrong to intervene should he have notice of ongoing unconstitutional practices, the uncontroverted evidence clearly demonstrates that the Commissioner did not have any notice of unconstitutional practices being carried out by his subordinates. Accordingly, it cannot be concluded that Commissioner Armstrong exhibited deliberate indifference by failing to intervene.

In support of his assertion that Commissioner Armstrong was on notice of ongoing unconstitutional practices, which he failed to remedy, the plaintiff asserts that his family members attempted to call Commissioner Armstrong and that the Commissioner refused to "accept (sic), return, or act on the calls." (Complaint, para. 26). This is insufficient to satisfy the notice requirement for a number of reasons. First, even accepting the truth of plaintiff's allegation only *supports* the legal conclusion that Commissioner Armstrong did not have notice of unconstitutional practices being carried out by his subordinates. Indeed, the plaintiff complains that the Commissioner would not accept or return the phone calls placed by his relatives, which were presumably intended to complain about the conditions of the plaintiff's confinement. At the very most, the plaintiff asserts a disagreement with Commissioner Armstrong about his telephone policy. It is untenable to suggest that this disagreement provides a sufficient legal predicate to conclude that Commissioner Armstrong was on notice of ongoing unconstitutional acts being carried out by his subordinates, which he failed to remedy.

Second, Commissioner Armstrong's affidavit regarding his telephone policy underscores the conclusion that he was not on notice of ongoing unconstitutional acts. As DOC Commissioner, defendant Armstrong routinely received a great number of phone calls from various individuals and organizations, including DOC staff, attorneys, legislators, media

6

representatives, former inmates, etc. (Attachment A, Armstrong Affidavit, para. 3). Due to the high volume of calls, and various other responsibilities involved with the position of DOC Commissioner, it was simply not feasible for the Commissioner to personally accept, or return, all phone calls. (Id., para. 4). There was no routine or practice to decline to accept, or fail to return, phone calls received from relatives of inmates. (Id., para. 5). In fact, as Commissioner, defendant Armstrong did speak on occasion with family members concerning various issues surrounding the incarceration of their relative. (Id., para. 5). Plaintiff alleges, in a rather ambiguous fashion, that his family members called the Commissioner to "report the unconstitutional violation." (Complaint, para. 26). These calls allegedly occurred approximately six years ago. Commissioner Armstrong does not have a recollection of any such calls. (Id., para. 6). However, in a phone conversation with a family member of an inmate, if a family member raised a concern about unconstitutional or inappropriate treatment or any other issue that indicated the necessity of an investigation, Commissioner Armstrong would, as a matter of practice, request that the family member document the concern. (Id., para. 7). Commissioner Armstrong would then routinely refer that documented complaint to DOC staff for resolution. (Id., para. 7). This was done to provide the DOC staff with a record of the issue and to avoid any duplicative or redundant efforts by DOC staff. (Id., para. 7). Despite this policy, there is no evidence of any such documented complaints made, during the pertinent period, to Commissioner Armstrong from the plaintiff's relatives.

In sum, there is no evidence that Commissioner Armstrong personally received phone calls or other notification from plaintiff's relatives, prior to the 1998 incident(s), that placed him on notice of ongoing unconstitutional acts. Additionally, even if it is assumed that plaintiff's family members placed calls to the Commissioner, and it is further assumed that the

Commissioner personally spoke with them, and it is further assumed that the Commissioner was personally advised of alleged mistreatment by DOC staff, those complaints, as a matter of policy, would have been documented and forwarded to the pertinent DOC facility for resolution.  There is no evidence of any such documented complaints from the plaintiff's relatives.  Moreover, even if there were documented complaints, the Commissioner's policy of forwarding them to the pertinent DOC department or facility for disposition could not be categorized as deliberate indifference.  Finally, even if all of the above assumptions are made concerning the notification to Commissioner Armstrong, there is also no evidence that Commissioner Armstrong's failure to intervene or act in some manner was the proximate cause of plaintiff's injury.  As detailed in a subsequent portion of this brief, the plaintiff complained to Warden David Strange about a number issues pertaining to the conditions of his confinement and Warden Strange responded to those complaints.[3]  If Commissioner Armstrong was notified of alleged improprieties, the response would have been the same -- a referral to the pertinent DOC department or facility for resolution.  See Sealy v. Gitner, 116 F.3d 47, 51 (2d Cir. 1997) (Second Circuit affirmed summary judgment for Commissioner when he referred plaintiff's appeal letter to the prison superintendent); Ramos v. Arguz, 2001 U.S. Dist. LEXIS 10327 (S.D.N.Y. 2001) (No personal involvement for superintendent when he forwarded complaints to subordinate).

Based on the foregoing, Commissioner Armstrong is entitled to summary judgment.

---

[3] As detailed in a subsequent portion of this brief, these complaints failed to adequately place the Warden on notice of ongoing constitutional acts.  See Colon v. Coughlin, 58 F.3d 865, 874 n.8 (2d Cir. 1995); Wright v. Smith, 21 F.3d 496, 501-502 (2d Cir. 1994); Johnson v. Wright, 234 F. Supp. 352, 362 (S.D.N.Y. 2002).

B.    **Warden David Strange**

David Strange was the Warden at Corrigan Correctional Institution at all times pertinent to this action.  (Attachment B, David Strange Affidavit, para. 2).  The plaintiff does not allege that David Strange personally participated in the March 9, 1998 incident.[4]  Rather, the plaintiff alleges that he notified Warden David Strange of "ongoing serious retaliation" and that Warden Strange failed to remedy it.  (Complaint, paras. 16, 17, 19, 20, 25).  Similar to the situation with Commissioner Armstrong, the plaintiff's allegations of notice, even if accepted as true, are insufficient to satisfy the notice requirement to establish supervisory liability on behalf of Warden David Strange.

The plaintiff initially asserts that he notified Warden David Strange that some of his legal materials had been taken in an incident of November 24, 1997.  (Complaint, paras. 15, 16).  He then asserts that he notified the Warden that on November 25, 1997, he was taken to court without shoes.  (Id., paras. 20, 21).  He then asserts that he notified the Warden that in January, 1998 Officer Thomas took a newspaper article and carbon paper that the plaintiff was using to write an article.  (Id., paras. 24, 25).  Even assuming the truth of these allegations, the plaintiff fails to satisfy the notice requirement.  These three incidents pre-date the March 9, 1998 incident of alleged excessive force by several months.  Moreover, these complaints have no connection or relevance to the alleged excessive force used by Lieutenant Thomas and other correctional staff in the incident of March 9, 1998.  The Second Circuit has recognized that inmates' claims of retaliation must be examined with skepticism and particular care because they are "prone to

---

[4] As a result of the Court's Ruling on Defendants' Motion to Dismiss, this appears to be the only remaining claim against Warden David Strange.

abuse" since prisoners can claim retaliation for every decision they dislike. <u>Graham v.</u> <u>Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (quoting <u>Flaherty v. Coughlin</u>, 713 F.3d 10, 13 (2d Cir. 1983). This standard is particularly applicable in the present case where the plaintiff complains of a couple of isolated and relatively non-serious incidents with DOC staff and yet apparently concludes that he was the subject of "ongoing retaliation." At the very most, the plaintiff can establish that Warden David Strange was on notice that the plaintiff had minor disagreements with DOC staff about issues relating to his confinement. Accordingly, it cannot be concluded that Warden David Strange was on notice of ongoing unconstitutional acts, which he failed to remedy. See, e.g., <u>Colon v. Coughlin</u>, 58 F.3d 865, 874 n. 8 (2d Cir. 1995) (Summary Judgment affirmed for supervisors on the ground, inter alia, that the letter to the Superintendent predated the incident); <u>Wright v. Smith</u>, 21 F.3d 495, 501-502 (2d Cir. 1994) (Summary Judgment for Commissioner affirmed when plaintiff complained generally about the conditions of his confinement), <u>Johnson v. Wright</u>, 234 F. Supp. 352, 362 (S.D.N.Y. 2002) (noting that the second type of personal involvement, failing to remedy the alleged wrong after learning of it, should be construed narrowly).

Additionally, the evidence demonstrates that Warden David Strange was not deliberately indifferent to plaintiff's various complaints, but rather that he appropriately responded to the complaints, and communicated that fact to the plaintiff. As Warden at Corrigan in 1997-98, Warden David Strange would occasionally converse with inmates and receive and respond to various written communications concerning issues surrounding their incarceration. (Attachment B, David Strange Affidavit, para. 4). Additionally, he would occasionally receive correspondence from family members concerning various issues surrounding their relative's incarceration. (<u>Id.</u>, para. 5). If, in these circumstances, Warden David Strange learned of an

allegation of ongoing unconstitutional practices, or any other issue that indicated the necessity for an investigation, he would order an investigation into the allegation. (<u>Id.</u>, para. 6). The plaintiff was transferred to Corrigan Correctional Institution on or about October 30, 1997. (<u>Id.</u>, para. 3). From that date until the incident of March 9, 1998 -- a period of approximately four months -- there is evidence that Warden David Strange received some correspondence from the plaintiff concerning the issues detailed above. However, the evidence also demonstrates that Warden David Strange did not ignore or fail to address the plaintiff's complaints. To the contrary, Warden Strange responsively addressed all of the plaintiff's concerns. (Attachment B to David Strange Affidavit, letter to plaintiff dated February 9, 1998).

In sum, plaintiff's supervisory liability claim against Warden David Strange fails for two principal reasons. First, while the plaintiff wrote to Warden David Strange concerning various issues pertaining to his confinement, these issues were generally not of constitutional magnitude and certainly cannot be said to have placed the Commissioner on notice that the plaintiff would be subjected to the alleged excessive force in his Complaint. Secondly, it is clear that Warden David Strange was not deliberately indifferent to these complaints. To the contrary, the uncontroverted evidence demonstrates that Warden Strange, or his subordinates, addressed all of the plaintiff's complaints. (<u>Id.</u>, paras. 7, 8). Accordingly, Warden David Strange is entitled to summary judgment.

## IV.    **RETALIATORY TRANSFER:  Warden Mark Strange**

Mark Strange was the Warden at MacDougall Correctional Institution at all times pertinent to this action. Pursuant to the Court's Ruling on Defendants' Motion to Dismiss, the sole remaining claim against Warden Mark Strange is a retaliatory transfer claim based on the plaintiff's transfer from MacDougall Correctional Institution to Garner Correctional Institution

on or about June 19, 1998. According to the plaintiff, he wrote letters to Warden Mark Strange in June of 1998 that the Warden "did not like" and, as a result, the Warden made a retaliatory transfer in violation of the plaintiff's First Amendment rights. (Complaint, paras. 58, 59, 60).

The law is clear that an inmate does not have a constitutional interest in remaining at a certain facility. See e.g. Montanye v. Haymes, 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). It is recognized, however, that while prison officials have broad discretion to transfer prisoners "for any reason or for no reason at all," Repress v. Coughlin, 585 F.Supp. 854, 857 (S.D.N.Y. 1984), they may not transfer solely in retaliation for the inmate's exercise of his constitutional rights. Meriweather v. Coughlin, 879 F.2d 1037 (2d Cir. 1989). In a § 1983 claim for retaliatory transfer, the plaintiff bears the burden of showing that his conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the defendant's decision to transfer. Davis v. Kelly, 981 F.Supp. 178, 181 (W.D.N.Y. 1997). Because claims of retaliation are easily fabricated, courts must examine prisoners' claims of retaliation with skepticism and particular care. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). In recognition of the reality that retaliation claims can be easily fabricated, plaintiff bears a heightened burden of proof. Gill v. PACT Org., 1997 U.S. Dist. LEXIS 13063 (S.D.N.Y. Aug. 28, 1997).

Plaintiff fails to satisfy his burden of proving a retaliatory transfer for the simple reason that the pertinent transfer was not ordered by Warden Mark Strange but rather was ordered -- as is standard procedure for the DOC -- by staff at DOC Population Management. In the plaintiff's letters to Warden Mark Strange, he makes the assertion that Warden Mark Strange was involved in a conspiratorial "cover-up." (See Complaint, paras. 58-60). Counselor Patterson from MacDougall Correctional Institution forwarded these letters to Population Management.

(Attachment C, Sieminski Affidavit, para. 5).  On the basis of their review of the letters, the DOC representatives at Population Management made the decision to order the plaintiff's transfer to Garner.  (Id., para. 6).[5]  This decision was made by Population Management and Warden Strange was not involved in that decision.  (Id., para. 7).

Based on the foregoing, the plaintiff's retaliatory transfer claim should be dismissed and summary judgment should be granted for defendant Mark Strange.

## V.    DUE PROCESS:  Investigator Elterich

Based on the Court's Ruling on Defendants' Motion to Dismiss, the sole remaining claim against defendant Elterich concerns alleged improprieties in the disciplinary hearing stemming from the March 9, 1998 incident.  Specifically, the plaintiff alleges that his "Due Process Rights" were violated at a "surprise" disciplinary hearing that was held on March 12, 1998 at Walker correctional facility.  (Complaint, paras. 52-53).

In order to reach the merits of plaintiff's due process claim, the Court must first determine whether the plaintiff had a protected liberty interest in remaining free from the penalties imposed as a consequence of the disciplinary hearing.  Sandin v. Connor, 515 U.S. 472, 479, 132 L.Ed.2d 418, 115 S.Ct. 2293 (1995); Wolff v. McDonnell, 418  U.S. 539, 41 L.Ed.2d 935, 94 S.Ct. 2963 (1974).  As explained in Sandin, the Court is required to examine the specific circumstances of the plaintiff's punishment in order to determine whether the punishment imposed "atypical and significant hardship" on the plaintiff so as to implicate a liberty interest. See Miller v. Selsky, 111 F.3d 7, 9 (2d Cir. 1997); Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997).  In doing so, the Court must consider the duration of the confinement, as well as the

---

[5] Based on the plaintiff's allegations about a conspiracy, it certainly made sense to transfer the plaintiff to another correctional facility where his conspiracy theory would not be perpetuated.

restrictiveness of the conditions imposed in relation to the prevailing conditions in the prison at large.  See Brooks, 112 F.3d at 47-49.

In the present case, the plaintiff does not allege that he suffered any penalty or punishment as a consequence of the March 12, 1998 disciplinary hearing.  Accordingly, he cannot satisfy his burden of proving that the punishment imposed as a result of the disciplinary hearing was an atypical and significant hardship so as to implicate a liberty interest.  The records pertaining to the plaintiff's disciplinary history suggest that the plaintiff was found guilty of three disciplinary charges following the March 12, 1998 hearing and received a cumulative penalty of 40 days in punitive segregation.  (See Attachment D, Disciplinary Process Summary Reports, 3-12-98).  This is insufficient to implicate a liberty interest within the meaning of Sandin.  See Sandin, supra (30 days in disciplinary segregation is insufficient to implicate a liberty interest); McNellis v. Meachum, 2:92CV936 (CPD) (D. Conn. 1995) (40 day period in administrative segregation does not implicate a liberty interest); Brooks v. DiFasi, 1997 WL 436750 (W.D.N.Y., July 30, 1997) aff'd 112 F.3d 46 (2d Cir. 1997) (no liberty interest in avoiding 180 days confinement); Warren v. Irvin, 985 F.Supp. 350, 354 (W.D.N.Y. 1997) (no liberty interest in avoiding 161 days confinement); Trice v. Clark, 1996 U.S. Dist. LEXIS 6644 (S.D.N.Y. 1996) (no liberty interest in avoiding 150 days confinement).  Accordingly, plaintiff's due process claim must be dismissed and summary judgment should be granted for defendant Elterich.

Even assuming that the penalty imposed on the plaintiff as a consequence of this disciplinary hearing did give rise to a protected liberty interest, plaintiff's due process claim must be dismissed because the evidence demonstrates that the plaintiff received all of the process that he was due during the course of this disciplinary hearing.  Whenever a protected liberty interest is involved, inmates in prison disciplinary hearings are entitled to certain due process

14

protections. These protections include: (1) advance written notice of the claimed violation; (2) a written statement of the hearing officer as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity for the inmate to call witnesses and present evidence in his defense as long as that process would not jeopardize institutional safety or correctional goals. Wolff v. McDonnell, 418 U.S. 539, 563-67. Furthermore, "an inmate subject to a disciplinary hearing is entitled to an impartial hearing officer," Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996), and there must be "some evidence to support the findings made in the disciplinary hearing." Superintendent v. Hill, 472 U.S. 445, 457, 86 L.Ed.2d 356, 105 S.Ct. 2768 (1985); Zavaro v. Coughlin, 970 F.2d 1148, 1152 (2d Cir. 1992).

Plaintiff's due process claim relates to the allegations that: (1) his right to notice of the charges was violated; (2) his right to call witness was violated; and (3) the hearing officer was "extremely hostile." (See Complaint, para. 53). The evidence, however, demonstrates that all of these claims are meritless. A disciplinary hearing was convened on March 12, 1998 concerning three separate disciplinary charges: (1) Causing a disruption; (2) Flagrant Disobedience; and (3) Threats. (Attachment D, Disciplinary Process Reports, 3-12-98). The plaintiff was notified of one of the charges (Flagrant Disobedience) on March 9, 1998 and notified of the other two charges on March 10, 1998. (Id., pp. 2, 5, 7). The plaintiff was also afforded an advocate for the hearing, namely Counselor Wiggins. (Id., pp. 1, 4, 7). At the hearing, the plaintiff was offered the opportunity to present any evidence, including witnesses. (Id., pp. 3, 6, 9). He refused this opportunity. (Id.) Based on statements made by the reporting correctional officials, the plaintiff was found guilty of these three charges. (Id.) As for the plaintiff's claim that the hearing officer was "hostile" and would not let him talk, there is simply no evidence to support this assertion. To the contrary, the evidence demonstrates that the plaintiff was afforded the opportunity to

present a defense, which he refused.  (Id.)  Accordingly, it cannot be reasonably asserted that plaintiff's due process rights were violated in the March 12, 1998 hearing.

Moreover and foremost to this claim against defendant Elterich, there is simply no evidence that defendant Elterich was present, or played any role, in this disciplinary hearing. (Id.)  Accordingly, all claims relating to this March 12, 19989 disciplinary hearing should be dismissed and defendant Elterich should be granted summary judgment.

**VI.    CONCLUSION**

For all of the foregoing reasons, defendants Armstrong, David Strange, Mark Strange and Raymond Elterich are entitled to summary judgment.


DEFENDANTS
John Armstrong, David Strange,
Mark Strange and Raymond Elterich

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:    _____/s/_____
Matthew B. Beizer
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct16304
E-Mail:  matthew.beizer@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 21st day

of March, 2005:

      Antonio Ponvert, III, Esq.
      Koskoff, Koskoff & Bieder, P.C.
      350 Fairfield Avenue, 5th Floor
      Bridgeport, CT  06604

      James Nugent, Esq.
      Nugent and Bryant
      236 Boston Post Road
      Orange, CT  06477


                _____/s/_____
                Matthew B. Beizer
                Assistant Attorney General