United States District Court FILED
District Of Connecticut

2005 MAY 27 P 5:10

DISTRICT COURT

Duane Ziemba

Civil Action No.
3:00 cv 391 (HBF)

VS.

Frederick Thomas, et al.    May 24, 2005

Plaintiff's Memorandum Of Law In Support
Of Motion In Opposition To Defendants'
Motion For Summary Judgment

## I. Facts And Background

The defendants do not challenge the
very serious facts in this action, that:
defendants Frederick Thomas, Mike Fretard,
Brett Fulcher, Timothy Shefer, Steven Willard,
and Richard Forrestal -- utilized excessive
force on the plaintiff on March 9, 1998, by
violently beating him on the Sallyport floor.
The defendants via their motion do, only,
challenge the personal involvement of the
Supervisory Officials: John Armstrong, David
Strange, Mark Strange, and Raymond Elterich.

3

# II. Personal Involvement

A supervisory Official may be personally involved in a Section 1983 violation in the following ways: (1) the defendant participated directly in the constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or; (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. <u>Colon V. Coughlin</u>, 58 F. 3d 865, 873 (2d Cir. 1995); <u>Williams V. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986).

## A. Defendant John Armstrong

Defendant John Armstrong was the Commissioner of the Department of Correction during the incidents complained of herein. He is

4

Sued in his individual capacity only. Amended Complaint at 9.

The plaintiff's family members called defendant John Armstrong repeatedly, reporting the Unconstitutional Violations. Every telephone call to his office Secretary, he refused to accept, return, or act on. As the Supervisory Official defendant Armstrong failed to remedy the wrong, and he exhibited deliberate indifference to the rights of the plaintiff by failing to act on the information indicating that Unconstitutional acts were occurring. Which led to the Unconstitutional Violations as described herein, inter alia, his agents Violently beating the plaintiff. Amended Complaint at 26.

To Substantiate these above facts is the Affidavit By Pamela Ziemba, Exhibit A. With its own Exhibits of Evidence. See also the Plaintiff's Affidavit In Support.

Pamela Ziemba in her Affidavit (Exhibit A) explains the Unconstitutional Violations. At No. 2, She states how "September 12, 1997 at Cheshire C.I., prison guards assaulted my Son (plaintiff). Duane (plaintiff) Sustained Serious, multiple injuries." And to prove these facts she attached to her Affidavit as Exhibit A, a

5

September 12, 1997 "horrific Medical Incident Report."

   Involving these above "horrific" September 12, 1997 Unconstitutional Violations, please also see the Plaintiff's Affidavit In Support at No. 1, which details the events of how Armstrong's Subordinates failed to protect the plaintiff - resulting in him being Stabbed, then they denied him needed medical treatment, and they maced him and beat him on the Shower room floor at Cheshire C.I.    These Six (6) Month prior to this action -- Unconstitutional Violations, are pending Civil action No. 3:98 cv 2370 (DFM).

   These prior hereto 1997 incidents are Significant -- tremendously -- due to these Unconstitutional Violations occurred only Six (6) Months before on March 9, 1998 herein this case Armstrong's Subordinates Violently (again only Six (6) months later) beat the plaintiff -- now on a Sallyport floor at Corrigan C.I.
   Notwithstanding that Armstrong was, in fact, on actual and constructive notice of the 1997 Serious Violations and horrific abuse by his Subordinates against

6                          -4-

the plaintiff, Id. as the Supervisory
Official he failed to remedy the wrong
(he did not take any action whatsoever
to insure that plaintiff was not unjustifiably
hurt again - by his subordinates whom he
was responsible for), and he exhibited
deliberate indifference to the rights of the
plaintiff by failing to act on the information
indicating that Unconstitutional acts
[excessive force] were occurring.

See Affidavit Of Pamela Ziemba, Exhibit A at
4 : "From September 15, 1997 forward, I called the
Connecticuts Department Of Correction Commissioner
Armstrong's Office located in Wethersfield, CT.
My telephone bill does not reflect my numerous
calls to Wethersfield because it is not a long
distance call from my home. I had already
proceeded up the chain of command to no
avail. I called Commissioner Armstrong's
office, as ultimately he was the highest
ranking Official in the Department of Corrections.
Commissioner Armstrong's private Secretary,
Alice Harris, Stated that : "Commissioner
Armstrong could not take my phone calls" and
acting on his behalf, She refused to give me

7

an appointment to meet with him."

Affidavit By Pamela Ziemba, Exhibit A at 5:
"I did as Duane's Mother, inform and describe, in great detail, to commissioner Armstrong's private Secretary Alice Harris, details and concerns that were to be relayed to commissioner Armstrong. These concerns were stated to be treated as urgent and relayed to commissioner Armstrong as soon as possible." (continued) "I personally informed commissioner Armstrong's office, of his employees, on September 12, 1997 Seriously, illegally, abusing, assaulting, and gravely injuring my son, Duane Ziemba. Then unjustifiably transferring him to Northern C.I., where he was locked into Segregation — to hide the inflicted damage that was done to him. Commissioner Armstrong's responses to these illegal acts by his employees was, as his private Secretary told me: "He [Commissioner Armstrong] is fully aware of his Staff on September 12, 1997 subjecting inmate Ziemba to injuries, for me to stop calling as he will not speak to me."
Clearly commissioner Armstrong's "attitude" "condoned these illegal acts of violence by

8

his Subordinates. He refused to even speak to me or even secure me an appointment for meeting. No Department of Correction investigation was ever conducted; Commissioner Armstrong failed to take any action against his employees who violated and injured my son, thus promoting a known **culture** of excessive force to be administered at will without restraint. As the highest ranking official in the Department of Corrections Commissioner Armstrong knowingly and deliberately decided to take no action to correct, curb, or stop, all current and future illegal conduct of this nature."

And see Affidavit By Pamela Ziemba, Exhibit A at 6: "Due directly to Commissioner Armstrong's gross indifference and that of his subordinates contained up and down the whole Department of Corrections chain of command, on Sept. 25, 1997 I contacted the Federal Bereau of Investigation ..." And at No. 7.

Please see Affidavit By Pamela Ziemba, Exhibit A at 9: "While Duane was being housed at Corrigan C.I., I was and remained in close contact with him. Due to the fact that I

9

was concerned and profoundly disturbed about his future treatment by any and all Connecticut Department of Corrections Officials. After the prior abuse and cover-up by the Armstrong Administration ..."

See Affidavit By Pamela Ziemba, Exhibit A at 10: "Before Duane on March 09, 1998 [The Main Subject of This Lawsuit] at Corrigan C.I., was taken into the Sallyport and violently, brutally, maced repeatedly and beaten...., once again I called Commissioner Armstrong's Office. I was only allowed to speak to his Secretary Alice Harris. I clearly reported that my son was in serious danger. Armstrong refused to accept, return, or act on my telephone calls. **He** jeopardized, by his morally corrupt indifference, my sons life. By his in-action, he failed to protect my sons life." (Emphasis Added).

See Affidavit By Pamela Ziemba, Exhibit A at 11: "On February 27, 1998 the New London Day Newspaper published an article that was written by Duane Ziemba, titled: "Warden Cannot Silence Press". On March 09, 1998

Corrigan C.I. prison Officials [LT. Thomas] took Duane and handcuffed him in the Sallyport area. He was threatened that: "They are going to make sure he writes no more articles."

LT. Thomas and a team of guards both maced Duane and beat Duane repeatedly. Duane lay on the concrete floor of the Sallyport until the macing and beating stopped. This savage attack placed Duane in a hospital bed for over a week with ensuing permanent injuries as a result of this. **I am certain**, if Commissioner Armstrong, in his position as the ultimate authority, had acted on earlier information provided by myself, I.E. previous threats, intimidation, active harassment, retaliation and assaults by his correction officers and their staff, resulting in serious injuries _ by his unlimited, absolute authority, could have prevented his staff from brutally beating my son.  Please also carefully see No. 12, 13 and 14 of Affidavit.

**In** support of her Affidavit, Pamela Ziemba has attached four exhibits of evidence. The 1st is Exhibit A - 9/12/97 Medical Incident Report; the 2nd is Exhibit B -

11

SNET telephone bill ; the 3rd is Exhibit
C - three FBI documents ; and the 4th is
Exhibit D - letter from State Senator
Billy Ciotto to defendant Armstrong (Notice).

Supervisory liability may be imposed when an
official has actual or constructive notice of
Unconstitutional practices and demonstrates
"gross negligence" or "deliberate indifference" by
failing to act. McCann V. Coughlin, 698 F.2d 112, 125
(2d Cir.1983).            "Following the Corrigan
prison officials beating Duane, in the Sallyport
on March 9,1998, I went to State Senator Billy
Ciotto. Specifically, I went to Senator Ciotto
for help. Even after the March 9, 1998 brutal
beating of my Son, Commissioner Armstrong and
Warden David Strange **continued** to act with
gross indifference. They failed and refused to
act on the illegal violations committed."
See Affidavit Pamela Ziemba, Exhibit A at 12.

Poe V. Leonard, "a supervisor may be found
liable for his deliberate indifference to the
rights of others by his failure to act on
information indicating Unconstitutional acts were
occurring or for his gross negligence in failing

to supervise his subordinates who commit such wrongful acts ...." 282 F.3d 123, 140 (2d Cir. 2002).        Id. "As the highest ranking official in the Department of Corrections Commissioner Armstrong knowingly and deliberately decided to take no action to correct, curb, or stop, all current and future illegal conduct of this nature." Affidavit Pamela Ziemba, Exhibit A at 11. <u>Meriweather V. Coughlin</u>, 879 F.2d 1037, 1048 (2d Cir. 1989) ("[S]upervisory liability may be imposed when an official has actual or constructive notice of Unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act.") See Id. Affidavit Pamela Ziemba, Exhibit A at 5. "I did as Duane's mother, inform and describe, in great detail, to Commissioner Armstrong's private Secretary Alice Harris, details and concerns that were to be relayed to Commissioner Armstrong." And See No. 10, "Once again I called Commissioner Armstrong's office." And please See No. 14, "the collusion, corruption and denial, sanctioned and promoted by Commissioner Armstrong to his subordinates in the Department of Corrections was **rampant**." (Emphasis Added).

13

<u>Provost V. City Of Newburgh</u>, 262 F.3d 146, 156 (2d Cir. 2001) (Supervisor may be found "grossly negligent" or "deliberately indifferent" if he "Knew or should have Known" of the underlying facts); <u>Rodriguez V. State Of Connecticut</u>, 169 F. Supp. 2d 39, 44-45 (D. Conn. 2001) (JCH) : Ruling on Defendants' motion for judgment on the Pleadings [DKT. No. 193] (May 8, 2003, Judge Hall) at 14-15.

See Amended Complaint at 50 : Defendant John Armstrong by his direct personal actions as the Commissioner, he caused the plaintiff to be violently beaten by his agents on March 9, 1998. Because on July 11, 1996 his agents beat prisoner Kevin King. At the jury trial of this case, Kevin King was awarded $ 2.2 Million in damages. Defendant Armstrong ignored this legal precedent and ignored the confirmed facts of his agents had beaten King. It is very well Known that Armstrong blatantly defies precedents of law and feels he is his own government. These facts must be carefully analyzed. That defendant Armstrong did not even reprimand his agents Verdon and Brown for beating prisoner King. What Armstrong did do, is he in fact shockingly personally

14

awarded both Verdon and Brown with medals of Valor. Armstrong's ludicrous actions sent shock waves through the State of Connecticut and the prison system. Armstrong loudly sent an undisputed clear statement out to every prison official in the State of Connecticut. A statement that their Commissioner 100% approves and promotes for his **agents** to use excessive force on prisoners. Because the worst thing that will happen to anyone who beats a prisoner, is their Boss Armstrong shall **applaud** and shall hand out medals. Defendant Armstrong has allowed the continuance of the policy and custom of excessive force to be used on prisoners. And he exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that Unconstitutional acts were occurring.

**T**he defendant John Armstrong has failed to raise a defense to the above claims in the Amended Complaint. Accordingly, the Court does not need to address any defense to these serious **undisputed** facts. See, e.g., Keeney V. Estate of

15

<u>Nolan</u>, 196 F. Supp. 2d 190, 199 (D. Conn. 2002) (JCH) (The defendants "did not present an argument that they were entitled to qualified immunity for striking [plaintiff] in the head and face. Accordingly, the Court does not address whether qualified immunity applies to that conduct.").

The King case is a very sore matter with the DOC and Office of the Attorney General, understandably.    Notwithstanding these facts, it does not as a matter of law allow defendant Armstrong to overlook paragraph 50 of this action.   Moreover, Armstrong failed to present an argument relevant to these ~~facts~~.

B. <u>Defendant David Strange</u>

The plaintiff through numerous letters and also verbally informed defendant David Strange of the incidents and the on going serious retaliation by his agents. As the Warden, a supervisory official he failed to remedy the wrong, he was grossly negligent in supervising his subordinates who committed the wrongful violations, and he

16                              - 14 -

exhibited deliberate indifference to the rights of the plaintiff by his failing to act on the information directly indicating that Unconstitutional acts were occurring. Which caused the violations herein. Amended Complaint at 16.

The plaintiff's family members and also the plaintiff, personally informed defendant David Strange of the incidents and contined serious retaliation, inter alia, the Unlawfulness by his agents. Amended Complaint at 20.

The plaintiff wrote numerous letters to defendant David Strange, (again) asking him to take steps to stop his agents severe retaliation against him. As the Supervisory Official he failed, continuously failed to take action. Amended Complaint at 25.

In Support of these facts, and that defendant David Strange could have, but failed to take action to stop the retaliatory acts that led up to the March 9, 1998 violent beating of the plaintiff; please see Exhibit C., this Memo is personally by David Strange dated March 10,

17                                   -15-

1998. This March 10, 1998 David Strange Memo is indeed the very same Memo he has submitted as evidence, to his Affidavit as Attachment B, of Defendants' Motion For Summary Judgment.

David Strange himself by submitting this Memo to this Court has made the admission that, as a matter of law, he is not entitled to Summary Judgment. Because this March 10, 1998 Memo is a genuine issue of material fact which proves three essential things. The 1st, is that before the plaintiff was violently beaten on March 9, 1998 — he did in fact make numerous justified complaints regarding the Corrigan C.I. prison officials harassing him and the retaliatory acts and David Strange (before the beating took place) did receive these justified complaints but took no action; and, David Strange did fail to remedy the wrong, and he was grossly negligent in supervising his subordinates, and he did exhibit deliberate indifference to the rights of the plaintiff; and most importantly; 3rd, he wrote this Memo, he never even sent it to plaintiff, and did not ever have plaintiff's complaints investigated -- as Memo is dated March 10, 1998 after the fact of on March 9, 1998

his staff members had already violently beat the plaintiff in the Sallyport. After the fact of the plaintiff being seriously injured, he got scared and fabricated this Memo.

In addition, please see Exhibit D, a letter from Major Collins to : Warden David Strange dated March 10, 1998 detailing the 9th incident (Violent beating), and also a "10 March 1998 Follow Up" by Captain Curtiss Wood, stating how plaintiff had ; "boot marks on his shoulder and lower back". On 10th the records show -- that Warden David Strange **Knew** that on the 9th his staff **beat**, **stompped**, and **assaulted** plaintiff, imbeding boot marks on "his shoulder and lower back". Further, please see Captain Wood`s report (Exhibit D) that states : "Ziemba states that he was struck several times by Lieutenant Thomas, once on the right eye." And ; "inmate Ziemba requested several times from Lieutenant Barr to call the State Police because he was assaulted by Lieutenant Thomas. This would be consistent with inmate Ziemba`s statement that he was assaulted by Lieutenant Thomas." Moreover, David

19

Strange on the 10th **Knew** that on the 9th
his staff utilized excessive force on the
plaintiff.  Therefore it is an absurdity that on
this same day (the 10th) he sat down typing
the plaintiff said Memo dated the 10th.

The Memo itself creates a credibility
issue that is not readily amenable to
resolution on Summary judgment. See
<u>United States V. Rem</u>, 38 F.3d 634, 644
(2d Cir. 1994).

Another example of defendant David Strange's
personal involvement, please See Exhibit B,
the plaintiff filed this official grievance at
Corrigan C.I, to the Warden - level one reviewer
David Strange - on January 27, 1998 and stated:
"Last week a LT. Thomas and c/o stole my
newspaper article I was writing and my
carbon paper. And LT. Thomas threatened my
life. This is all in on going Unlawful
retaliation".     Defendant David Strange
failed to act on this grievance.

Another example of defendant David Strange's
personal involvement, See Plaintiff's Affidavit In
Support at 4 and 5.   "It was the custom at

Corrigan C.I. for the Warden David Strange, at lunch time to be in the lunch room — standing watching the inmates. I did (Plaintiff), repeatedly, speak with him (Strange) about his Corrigan staff being extremely hostile towards me due to my suing their fellow employees and my writing the CT. Newspapers concerning the D.O.C. corruption. I (Plaintiff) specifically informed him of the on-going overt harassment and retaliation and how LT. Thomas (defendant) had threatened me. David Strange told me that the incidents would be investigated, but they never were whatsoever, the retaliation continued until on March 9, 1998 in the sallyport his subordinates violently beat me. I am aware of the facts that David Strange as the Warden utterly failed and refused to take action to investigate my complaints, he acted with deliberate indifference, and he did not remedy the prior or the subsequent unlawful violations herein this case."

> The Plaintiff's Affidavit In Support (above) and evidence referenced refutes the Affidavit By David Strange.

21

Another example of defendant David Strange's personal involvement, See Affidavit By Pamela Ziemba, Exhibit A at 10., In detail she states the facts pertinent, and the actions she personally took.    And that : "Over and over I (she) called Corrigan C.I. Warden David Strange, informing him of on going harassment and retaliation against Duane (Plaintiff). On my knowledge and belief, he failed to act on my information. Warden David Strange did not take any action to protect my son". (Emphasis Added).

Another example of defendant David Strange's personal involvement, See Affidavit By Pamela Ziemba, Exhibit A at 12., She states the following : "Following the Corrigan prison officials beating Duane, in the Sallyport on March 9, 1998, I went to State Senator Billy Ciotto. Attached as Exhibit D. is a true and correct copy of Senator Ciottos' letter to Commissioner Armstrong dated December 29, 1998. Specifically, I went to Senator Ciotto for help. Even after the March 9, 1998 brutal beating of my son, Commissioner Armstrong and Warden David Strange continued to act with gross indifference. They failed and refused to act

22

on the illegal violations committed."

To see another example of the personal involvement of defendant David Strange, please see his Affidavit - Attachment B to Defendants Motion For Summary Judgment. At No. 6, he states: "From the date of the Plaintiff's transfer to Corrigan on October 30, 1997 Until March 9, 1998, I did receive some correspondence from the plaintiff in which he expressed complaints about various matters concerning his confinement, including the "taking" of his legal materials and other property, his being taken to court without shoes, and the failure of DOC staff to adequately respond to his grievances."

Defendant David Strange himself by stating the above proves that he is not entitled to summary judgment. Because these are genuine issues of material fact that support, before the plaintiff was beaten in the Sallyport on March 9, 1998, Corrigan prison officials did inflict retaliation against him, and David Strange was informed, but failed to take action to abate it, thereby allowing it to escalate, which knowingly led up to the

23

plaintiff being beaten on March 9, 1998.
And the material facts in dispute are,
whether or not David Strange as
the supervisory official took any form
of action with respect to these
"complaints" that were made beforehand.

To see one more even further example, See
Exhibit E, and Affidavit by Pamela Ziemba,
with attached three (3) Grievances filed by the
plaintiff at Corrigan C.I.   Involving the
March 9, 1998 Sallyport beating/injuries. All
three (3) of these Grievances went to
David Strange – the Warden of Corrigan C.I.
– the Level One Reviewer.   He failed to act
on all three (3) of these grievances.

**Id.** Cases Cited.

C. <u>Defendant Mark Strange</u>

At MacDougal C.I. defendant Mark Strange
unjustly took documents out of the plaintiff's
Master file, which involved the plaintiff
being beaten on March 9, 1998. Amended
Complaint at 57.

24

The plaintiff respectfully addressed this matter to defendant Mark Strange, by letters dated June 8, 15 and 18, 1998. Amended Complaint 58.

The very next day on June 19, 1998 in <u>Sole retaliation</u> defendant Mark Strange transferred the plaintiff to Gardner C.I. He made this retaliatory transfer solely in retaliation, due to plaintiff wrote him letters "he didn't like". Which is in violation of the plaintiff's Constitutionally protected First Amendment rights. Amended Complaint 59.

The plaintiff strenuously moves this honorable Court — review the material facts, of Mark Strange **has not** submitted an affidavit to oppose, dispute, or refute these facts.

Prison Officials may not transfer solely in retaliation for the inmate's exercise of his Constitutional rights. <u>Meriweather V. Coughlin</u>, 879 F. 2d 1037 (2d Cir. 1989).

"A claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of

25

Constitutionally protected rights." <u>Gill V. Mooney</u>, 824 F.2d at 194 ; accord, e.g., <u>Davis V. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1989).

"Prison authorities may not transfer an inmate in retaliation for the exercise of Constitutionally protected rights." <u>Graham V. Henderson</u>, 89 F.3d 75, 80 (2d Cir. 1996).

"Retaliation against a prisoner for pursuing a grievance violates the right to petition government for redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under §1983." <u>Colon V. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995).

"Prisoners, like non-prisoners, have a right of access to the Courts and to petition the government for redress of grievances, and prison officials **may not** retaliate against prisoners for the exercise of that right." <u>Franco V. Kelly</u>, 854 F.2d 584, 590 (2d Cir. 1988) ; "'An act in retaliation for the exercise of a Constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper.'" <u>See Morello V. James</u>, 810 F.2d

26

344, 347 (2d Cir. 1997). The right to petition government for redress of grievances in both judicial and administrative forums -- "'is among the most **precious** of the liberties Safeguarded by the Bill of Rights.'" (quoting <u>United Mine Workers v. Illiois State Bar Ass'n</u>, 389 U.S. 217, 222, 19 L.Ed. 2d 426, 88 S.Ct. 353 (1967)).

"Prison Officials may not transfer an inmate in retaliation for the exercise of Constitutionally protected rights"..." <u>Davis v. Kelly</u>, 160 F. 3d 917, 920 (2d Cir. 1989).

Prison Officials may not punish an inmate because he exercises his Constitutional rights. <u>Goff v. Burton</u>, 7 F3d 734, 736-37 (8th Cir. 1993), Cert. denied, 114 S.Ct. 2684 (1994). This prohibition against retaliatory punishment applies to transfers between prisons in a single state, and to transfers between State and federal prison Systems under the Compact. See <u>Sterling v. Wood</u>, 68 F. 3d 1124, 1126 (8th Cir. 1995) ; <u>Hazen v. Reagen</u>, 16 F. 3d 921, 925 (8th Cir 1984) ; <u>Ponchik v. Bogan</u>, 929 F. 2d 419 (8th Cir. 1991) ; <u>Murphy v. Missouri Dept. of Correction</u>, 769 F. 2d 502, 503 (8th Cir. 1995).

The effect on freedom of Speech of retaliation

27

need not be great in order to be actionable. _Walker v. Pataro_, 2002 U.S. Dist. LEXIS 7067, No. 99 Civ. 4607, 2002 WL 664040, at 9 (S.D.N.Y. Apr. 23, 2002).

The law is clearly established that prison officials cannot retaliate against an inmate for the exercise of a Constitutional right. Indeed, in _Scher v. Engelke_, 943 F.2d 921 (8th Cir. 1991). Cert. denied, 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed. 2d 652 (1992), the Eighth Circuit observed: The law making retaliation for the exercise of a Constitutional right actionable under § 1983 has been established for some time and an objectively reasonable official could not fail to know of it.    _Freeman v. Blair_, 862 F.2d 1330, 1332 (8th Cir. 1988) (Citing _Mount Healthy City Board of Education v. Doyle_, 429 U.S. 274, 83-84, 97 S.Ct. 568, 574 50 L.Ed. 2d 471 (1977); _Bruise v. Hudkins_, 584 F.2d 223, 229 (7th Cir. 1978), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed. 2d 466 (1979).

_Thaddeus-X v. Blatter_, 110 F.3d 1233 (6th Cir. 1997). Retaliation against inmate for exercising his or her Constitutional rights is itself a violation of Constitution.

28

The documents that defendant Mark Strange unjustly took out of the plaintiff's master file, which involve the plaintiff being beaten on March 9, 1998, Id. Are Exhibits F, G and H. Note that Mary Morgan Wolff on each of her three letters to plaintiff dated April 14, 1998, Stated how, in fact, copies were put in the "central file" (plaintiff's master file.). Additionally, See Exhibit I, this April 20, 1998 letter also by Warden Wolff States: "Please be advised that your original Disciplinary Report Appeals were forwarded to your master file at MacDougall-C.I.". These are all genuine issues of material fact.

The plaintiff reviewed and received a copy of his "master file" and the above documents were originally in the file, but the counselor Stated that Mark Strange took them out. Therefore plaintiff addressed this matter to Mark Strange via letters dated June 8 and 15, 1998 — Exhibits J and L. However, by letter of response dated June 10, 1998 Mark Strange falsely claimed the following: "Your disciplinary appeals were never placed in your file and were returned to Warden Wolff." Yet the record shows just the opposite.

29

The Disciplinary Appeals – Exhibits F, G and H, State the following facts: "and intentional infliction of pain and emotional distress because Corrigan Officials beat me hurting me bad. Gave me false D.R.`s."

Mark Strange attempting to cover-up these facts took these documents out of the plaintiff`s master file.   Then when the plaintiff petitioned for redress of this grievance -- via his letters -- in return Mark Strange, in retaliation transferred him.

The defendant Mark Strange`s entire defense to the Unconstitutional retaliatory transfer, is it`s alleged that: "the pertinent transfer was not ordered by Warden Mark Strange but rather was ordered -- as is standard procedure for the DOC -- by staff at DOC Population Management". Defendants` Memorandum of Law at 12.     The problem with this defense is the above is Knowingly not true.

What is most disturbing is Counsel for the defendants: Matthew B. Beizer has submitted a perjured statement to this Court. Knowingly and very deliberately this is.

Please See Attachment C, to Defendants` Mem. of Law – Affidavit of John Sieminski, who is

30

a Warden. At 4., he States under oath the following: "The decision to transfer an inmate within the DOC from one correctional facility to another is made by Population Management."

The Commissioner -- the highest authority within the DOC -- defendant Armstrong, under oath proves that the above statement is a false perjured statement. Please see Exhibit M, Interrogatories served on Defendant John Armstrong, and his responses thereto. In his responses at 2, he states the following: "The decision to transfer an inmate from one correctional facility to another rests within the discretion of the Unit administrators" (Wardens) , in this case Mark Strange.

D. Defendant Raymond Elterich

The plaintiff could, but voluntarily does not oppose the release of Raymond Elterich out of this § 1983 action.

31

Wherefore, for all of the foregoing reasons it is **beyond cavil** that defendants John Armstrong, David Strange and Mark Strange are not entitled to Summary Judgment.

Respectfully Submitted
The Plaintiff - As Pro Se
~~Duane Ziemba~~
Duane Ziemba #128963
Garner C.I.
50 Nunnawauk Road
Newtown, CT. 06470

32

<u>Certification</u>

I hereby certify that a copy of the foregoing was mailed to the following on this 24thday of May 2005:

Matthew B. Beizer, Esq,
Perry Zinn Rowthorn, Esq,
Assistant Attorney's General
110 Sherman Street
Hartford, CT. 06105

Antonio Ponvert III, Esq,
Koskoff, Koskoff and Bieder, P.C.
350 Fairfield Avenue, 5th Floor
Bridgeport, CT. 06604

James Nugent, Esq.
Nugent and Bryant
236 Boston Post Road
Orange, CT. 06477

By: Duane Ziemba
    Duane Ziemba